CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 25, 2024
LAURA A. AUSTIN, CLERK
BY:     /s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **PAULUS IRVIN PERKINS,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:23-cv-00074** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **D. NEWCOMER, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Paulus Irvin Perkins, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against nine individuals employed by the Virginia Department of Corrections ("VDOC"). Perkins claims that the defendants violated his federal and state constitutional rights by impeding his efforts to obtain a media device offered through JPay LLC ("JPay"), a third-party contractor that provides products and services to the VDOC's inmate population. The case is presently before the court on the defendants' motion for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 32; Perkins's motions for relief under Rule 56(d), ECF Nos. 41 and 46; and the defendants' motion for extension of time to respond to the plaintiff's discovery requests, ECF No. 51. For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**; Perkins's motions are **GRANTED IN PART AND DENIED IN PART**; and the defendants' motion for extension of time is **GRANTED**.

### I.      Background

### A.      Factual Allegations in the Complaint

Perkins is an African American inmate who has been in the custody of the VDOC since at least 2014. Compl., ECF No. 1, at 11, 37. At all times relevant to this action, Perkins was incarcerated at Augusta Correctional Center ("Augusta"). Id. at 7.

In 2014, while incarcerated at another VDOC facility, Perkins purchased his first media device from JPay. Id. at 11. Perkins subsequently spent more than $3,000 buying music from JPay's media store to play on his device. Id. He also used the device for his college courses. Id.

As of August 2020, Perkins no longer had access to a functioning JPay device. Id. at 12. Over the next two years, he used the computer kiosks in his assigned housing units to place "trouble tickets" to JPay requesting to purchase and receive a replacement device. Id. Although other inmates received new devices from JPay during that period, Perkins's efforts were unsuccessful. Id. at 12–13.

In April 2022, administrative officials at Augusta posted a facility-wide memorandum informing inmates that JPay would be distributing new "JP6" tablets. Id. at 13. In May 2022, Perkins "signed a contract to receive a free JP6 loaner tablet" from JPay. Id. On May 17, 2022, JPay representatives distributed free JP6 tablets to other inmates housed in Perkins's cell block, including his white cellmate. Id. Despite being told by a JPay representative that there were enough free tablets to distribute to any inmate who wanted one, Perkins did not receive a tablet. Id. at 13. The representative indicated that defendant D. Newcomer, the Warden of Augusta, had "presented him with a Red List and Green List which determined . . . who would and who would not receive a free JP6 loaner tablet" on that date. Id. at 14.

Perkins subsequently filed an informal complaint against Newcomer "for preventing him from being distributed a free JP6 loaner tablet, after he had signed a contract to receive one."

2

Id. at 14. Perkins then filed a formal grievance against Newcomer for refusing to allow JPay to provide him with a free tablet. Id. at 15. The initial grievance was rejected at intake by defendant J. Chittum, the Grievance Coordinator at Augusta, and Perkins then filed an informal complaint against Chittum for attempting to obstruct his ability to exhaust the grievance process. Id. Defendant L. Canterbury, the Institutional Ombudsman at Augusta, responded to that complaint. Id. at 16.

On June 7, 2022, Perkins submitted a trouble ticket to JPay using the JPay kiosk in his housing unit. Id. Perkins notified the company "that he did not receive a free JP6 loaner tablet on May 17, 2022, like other prisoners assigned to cell block D-2 at Augusta Correctional Center." Id.

On June 15, 2022, Perkins filed an informal complaint against Newcomer for refusing to allow him to receive the "free JP6 loaner tablet that was distributed to Augusta Correctional Center's white prisoners." Id. at 17. Perkins expressed the belief that he was "being discriminated against as a Black person." Id. He then filed a formal grievance raising the same issue. Id. In the meantime, in response to one of the prior informal complaints, Chittum informed Perkins that he "must send a request to Operations to receive a JP6 loaner tablet." Id. Consequently, on June 19, 2022, Perkins contacted defendant Lynn Graham, the Operations Manager at Augusta, and inquired as to how he could receive a free JP6 loaner tablet. Id. at 18. Perkins noted that "33 days had passed since JPay representatives distributed free JP6 loaner tablets to Augusta prisoners" and that "he still had not received a free JP6 loaner tablet." Id.

Over the next few days, Perkins continued to utilize the grievance process to alert correctional officials to the fact that he had not received a free loaner tablet despite tablets being

distributed to white prisoners at Augusta. <u>Id.</u> at 19–22. Chittum rejected one of his grievances at intake on the basis that it raised an issue that was beyond the control of the VDOC. <u>Id.</u> at 19. Perkins appealed the intake decision to the Regional Administrator, and defendant Robert Bivens[1] affirmed the decision. <u>Id.</u> at 22.

On June 26, 2022, JPay sent Perkins an email informing him that "the company had sent a second free JPay 6 loaner tablet to him." <u>Id.</u> at 22. The email indicated that the "delivery of the second free JPay 6 loaner tablet to Augusta Correctional Center would take 30–45 days." <u>Id.</u> The email also included "the delivery number for the first free JP6 loaner tablet sent to [Perkins] on May 10, 2022," which he had not received when tablets were being distributed to other inmates. <u>Id.</u> at 23.

On June 30, 2022, Perkins filed an informal complaint against Graham and other unknown prison personnel allegedly responsible for barring him from receiving a free loaner tablet on May 17, 2022. In response, Graham informed Perkins that "all inmates" would receive a JP6 tablet. <u>Id.</u> at 23. Perkins then filed a formal grievance asserting the same complaint. <u>Id.</u> at 23–24. Grievance Coordinator Chittum refused to log the grievance on the basis that the VDOC "has no control over JPay." <u>Id.</u> at 24. Perkins appealed Chittum's decision to defendant Carl Manis, a VDOC Regional Administrator, and defendant C.L. Parr upheld Chittum's decision. <u>Id.</u> at 24.

On August 20, 2022, Perkins attempted to contact JPay via email to inquire about the second free tablet that had reportedly been sent to him at the end of June. <u>Id.</u> at 25. At that time, Perkins discovered that his email access to JPay's electronic help center had been blocked.

---

[1] Bivens is identified in the complaint as Robert Bate. By previous order, the docket was updated to reflect the defendant's correct last name. ECF No. 25.

Id. He received the following message each time he attempted to contact JPay: "You cannot create a new communication. Inmate has reached maximum number of communications." Id.

Perkins alleges, on information and belief, that JPay grants VDOC employees "broad authority to monitor, intercept, and block both outgoing and incoming emails including the ability of prisoners trying to access the company's products and support services." Id. On August 23, 2022, Perkins sent a "cease and desist notice" to defendant Benjamin Lokey, Head Investigator at Augusta, requesting that Lokey remove the email block. Id. At the time this action was filed, the email block had not been removed. Id.

Perkins filed additional informal complaints in September 2022, followed by formal grievances. Id. at 25–26. In response to one of the informal complaints, Graham advised Perkins to contact JPay directly to receive a free JP6 loaner tablet. Id. Likewise, defendant R. Northrup advised Perkins to submit a trouble ticket to JPay regarding the issue with email access. Id. at 29. Similarly, in response to various grievance appeals, defendants informed Perkins that the VDOC had no control over JPay and that he must contact JPay regarding the issues raised in his grievances. Id. at 30.

Correctional officers at Augusta subsequently distributed JP6 tablets to other inmates at the facility. Despite being informed by JPay that a second JP6 tablet had been shipped to him, Perkins had still not received a JP6 tablet as of January 18, 2023, the date on which he signed the complaint filed in this action. Id. at 32.

B.    Perkins's Claims

In a section of the complaint titled "Claims for Relief," Perkins lists eleven claims. Those claims are summarized as follows:

5

**Claim One**: Defendants Newcomer, Graham, Chittum, and Manis violated Perkins's right to procedural due process under the Fourteenth Amendment by refusing to allow JPay representatives to issue him a free JP6 tablet.

**Claim Two**: Defendants Newcomer, Graham, Chittum, Bivens, Canterbury, Parr, and Manis violated Perkins's right to contract under the Fourteenth Amendment by preventing him from exercising his contractual right to purchase, enjoy, and use JPay products and services.

**Claim Three**: Defendants Newcomer, Graham, Chittum, Bivens, Canterbury, Parr, and Manis engaged in race discrimination in the context of making and enforcing contracts, in violation of 42 U.S.C. § 1981.

**Claim Four**: Defendants Newcomer, Graham, and Manis discriminated against Perkins based on his race, in violation of the Equal Protection Clause of the Fourteenth Amendment.

**Claim Five**: Defendants Newcomer, Graham, and Manis discriminated against Perkins as a "class of one," in violation of the Equal Protection Clause of the Fourteenth Amendment.

**Claim Six**: Defendants Newcomer, Chittum, Graham, Canterbury, Parr, Bivens, and Manis conspired to deprive Perkins of his right to equal protection, in violation of 42 U.S.C. § 1985(3).

**Claim Seven**: Defendants Manis, Parr, Bivens, Newcomer, Graham, Canterbury, and Chittum neglected to prevent a conspiracy to deprive Perkins of his right to equal protection, in violation of 42 U.S.C. § 1986.

**Claim Eight**: Defendants Newcomer, Lokey, Chittum, Parr, and Northrup violated Perkins's right to free speech under the First Amendment by blocking his email access to JPay and/or failing to respond to his complaints regarding the issue.

**Claim Nine**: Defendants Newcomer, Graham, Chittum, Parr, Bivens, Canterbury, Manis, Lokey, and Northrup violated the Commerce Clause of the United States Constitution.

> **Claim Ten**: Defendants Newcomer, Graham, Lokey, Northrup, and Manis violated Perkins's right to contract under the Constitution of Virginia.
>
> **Claim Eleven**: Defendants Newcomer, Chittum, Canterbury, Bivens, Parr, Manis, and Graham violated Perkins's right to equal protection under the Constitution of Virginia.

Id. at 33–73.

### C.    Defendants' Motion for Summary Judgment

The defendants have moved for summary judgment on all of Perkins's claims. The defendants argue that some of the claims are subject to dismissal for failure to state a claim upon which relief may granted. As to other claims, the defendants rely on affidavits to support their motion for summary judgment. See Defs.' Br. Supp. Mot. Summ. J., ECF No. 33.

### D.    Perkins's Motions for Relief under Rule 56(d)

Perkins filed a response in opposition to the motion for summary judgment in which he argues that the motion should be denied as premature under Rule 56(d).[2] ECF No. 42. He contends that discovery remains ongoing and that he has yet to obtain documents relevant to certain claims. See id. at 5 ("Defendants possess official documents and records which directly contradict Defendants['] assertions that Paulus Irvin Perkins' email access to JPay LLC was not blocked between August 2022 and March 17, 2023."); id. at 8 ("Document evidence in possession of Defendants named in my first discovery request for production of documents

---

[2] The response is accompanied by a 101-page memorandum in opposition. ECF No. 42-2. The memorandum appears to include entirely new legal theories or claims that were not included in the complaint. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); see also Henderson v. City of Roanoke, No. 20-2386, 2020 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (emphasizing that "no litigant is exempt from [this] well-established rule" and declining to consider the new legal theory raised by the appellant). Accordingly, the court will not consider any of the new claims in ruling on the defendants' current motion for summary judgment.

will confirm that my federal and Virginia civil rights were violated by Defendants on racial and other forms of discrimination."). Perkins also filed a motion to stay, ECF No. 41, and a motion for extension of time, ECF No. 46, both of which seek relief under Rule 56(d).

Perkins has since filed additional discovery requests, including requests for admission, requests for production of documents, and interrogatories. ECF No. 50. Defendants have filed a motion for an extension of time to respond to the discovery requests. ECF No. 51.

## II.    Standards of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that if the nonmovant demonstrates that he cannot present facts essential to justify his opposition, the court may defer considering the motion, deny it, or allow time for the nonmovant to take discovery or obtain affidavits or declarations. Fed. R. Civ. P. 56(d). "Rule 56(d) relief should be liberally granted, particularly when a pro se plaintiff seeks evidence that is 'exclusively in the control of the opposing party.'" Firewalker-Fields v. Clarke, 58 F.4th 104, 123 (4th Cir. 2023) (quoting Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021)).

In their motion for summary judgment, the defendants contend that certain allegations fail to state a claim upon which relief can be granted. Although the defense of failure to state a claim is typically raised in a Rule 12(b)(6) motion, it may also be asserted in a motion for summary judgment or at trial. See Martin v. Southwestern Va. Gas Co., 135 F.3d 307, 309 n.1 (4th Cir. 1998); Fed. R. Civ. P. 12(h)(2)(C). Additionally, when a complaint is filed by a prisoner who seeks redress from government employees, the court may sua sponte dismiss any portion

of the complaint that "fails to state a claim upon which relief may be granted." 28 U.S.C.

§ 1915A(b)(1). A plaintiff is not entitled to discovery before a claim can be dismissed on that

ground. See Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is

deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); Desper v. Clarke,

1 F.4th 236, 249 (4th Cir. 2021) ("Insofar as [the plaintiff] is unaware of adequate facts to

support a plausible claim for relief, his inability to marshal facts absent discovery cannot save

his conclusory and speculative allegations from dismissal.").

To withstand dismissal for failure to state a claim, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal,

556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is

facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual

allegations" are not required, "a formulaic recitation of the elements of a cause of action will

not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted,

"the court must construe all factual allegations in the light most favorable to the plaintiff."

Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a

civil rights issue and files a complaint pro se, the court must construe pleading requirements

liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints

are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief

that is plausible on its face." <u>Thomas v. Salvation Army S. Terr.</u>, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III.    Discussion

**A.    Claims Subject to Dismissal for Failure to State a Claim**

As indicated above, the defendants' motion for summary judgment seeks dismissal of certain claims for failure to state a claim upon which relief may be granted. For the reasons set forth below, the court concludes that Claims One, Two, Six, Seven, Nine, and Ten must be dismissed on that ground.

### 1.    Claim One

In Claim One, Perkins asserts that Newcomer and other defendants violated his right to procedural due process under the Fourteenth Amendment by refusing to allow JPay representatives to issue him a free JP6 tablet. Perkins alleges that he was "deprived of liberty and property interests because he had a legal entitlement to possess a JP6 tablet" and that the deprivation occurred "without a hearing or process." Compl. 33.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Due process contains both procedural and substantive components." <u>Snider Int'l Corp. v. Town of Forest Heights</u>, 739 F.3d 140, 145 (4th Cir. 2014). "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." <u>Prieto v. Clarke</u>, 780 F.3d 245, 248 (4th Cir. 2015).

Perkins does not plausibly allege that he had a cognizable liberty interest in possessing a JP6 tablet. A liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word, 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Auston, 545 U.S. 209, 221 (2005). With respect to the latter, an inmate must show: "(1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Martin v. Duffy, 858 F.3d 239, 253 (4th Cir. 2017) (internal quotation marks and alterations omitted). Courts have uniformly held that the denial of access to an electronic tablet does not rise to the level of an atypical and significant hardship, and that "inmates do not have a protected liberty interest in tablet use." Burrell v. Doccs, 655 F. Supp. 3d 112, 128–29 (N.D.N.Y. 2023) (collecting cases); see also Lewis v. Zmuda, No. 5:23-cv-03236, 2024 WL 359332, at *3 (D. Kan. Jan. 31, 2024) ("Because the use of a tablet is not a protected liberty interest, Plaintiff's claim that he was entitled to due process before his tablet privileges were suspended is subject to dismissal.").

To the extent that Perkins alleges that he was deprived of a protected property interest without due process, his claim fares no better. Even assuming that Perkins had a property interest in the undelivered JP6 tablet or the music he purchased to play on the tablet, "the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 80 (4th Cir. 2016) (emphasis in original) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)). "Under Hudson v. Palmer, 468 U.S. 517 (1984), negligent or intentional deprivations of property by a

state employee do not state a claim of constitutional magnitude when there is an adequate post-deprivation remedy." Doe v. Montgomery Cnty., 47 F. App'x 260, 261 (4th Cir. 2002); see also Hudson, 468 U.S. at 533 (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available").

Here, Perkins alleges that Newcomer and other defendants intentionally and arbitrarily refused to allow him to receive one of the free JP6 tablets distributed to other inmates. See, e.g., Compl. 20 (alleging that Newcomer "refused to allow JPay LLC to distribute a free JP6 loaner tablet   . . . in the same way the tablets had been distributed to white prisoners at Augusta Correctional Center"); id. at 22 (alleging that Newcomer "discriminated against him" by refusing to allow JPay representatives to give him a JP6 loaner tablet); id. at 23 (alleging that Graham and other VDOC personnel "barr[ed him] from receiving a free JP6 loaner tablet        . . . like other prisoners"). The unauthorized, intentional conduct described in the complaint falls squarely within the ambit of Hudson. Consequently, Perkins has no viable claim for denial of procedural due process "if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Under the Virginia Tort Claims Act ("VTCA"), the Commonwealth of Virginia is liable for claims for damages resulting from "loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of his employment." Va. Code § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation

remedies for torts committed by state employees. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985). Because adequate remedies are available under state law for the intentional, unauthorized deprivation of property, Perkins has no viable claim for denial of procedural due process.

For these reasons, Claim One fails to state a claim upon which relief can be granted. Accordingly, the defendants' motion will be granted with respect to this claim.

**B.    Claim Two**

In Claim Two, Perkins asserts that various defendants violated his right to contract under the Fourteenth Amendment. He alleges that he "signed a contract to receive a JP6 tablet" and that he was "deprived of his contract rights to purchase, enjoy, and use JPay LLC products, services, and benefits associated with his contractual relationship with the company." Compl. 35. He claims that the defendants' actions violated his "federal right[] to contract." Id. The court agrees with the defendants that this claim is subject to dismissal for failure to state a claim upon which relief can be granted.

First, "[t]here is no positive federal 'right to contract' at all times on all subjects" under the Fourteenth Amendment. Love v. Pepersack, 47 F.3d 120, 123 n.4 (4th Cir. 1995). The Amendment "does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law." West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391 (1937). Thus, while the "liberty" guaranteed by the Fourteenth Amendment may include "the right of the individual to contract [and] to engage in any of the common occupations of life," Bd. of Regents v. Roth, 408 U.S. 564, 572 (1972), there is no separate claim for violation of the right to contract under the Fourteenth Amendment. Love, 47 F.3d at 120

13

n.4 (noting that the plaintiff's claim for denial of the right to contract was "just a component of [her] substantive due process claim").

As explained above, "due process has both substantive and procedural components." D.B. v. Cardall, 826 F.3d 721, 739 (4th Cir. 2016). Substantive due process protects individuals from "arbitrary" government action that constitutes "egregious official conduct." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998). A plaintiff typically "must show that the violation involved abusing executive power or employing it as an instrument of oppression." Desper v. Clarke, 1 F.4th 236, 247 (4th Cir. 2021) (internal quotation marks omitted). "The conduct must go beyond simple negligence and must be intended to injure in some way unjustifiable by any government interest." Id. (internal quotation marks omitted).

Although Perkins relies on the Fourteenth Amendment in asserting Claim Two, he does not specify whether the claim rests on substantive or procedural due process. To the extent that Perkins's allegations of discriminatory treatment can be construed as a substantive due process claim, the court concludes that the claim is duplicative of the equal protection claims asserted in Claims Four and Five. The Supreme Court has made clear that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Here, the Equal Protection Clause of the Fourteenth Amendment provides an explicit source of protection against the discriminatory behavior described in the complaint—namely that Newcomer and his colleagues prevented Perkins from receiving and using a JP6 tablet based on racial animus and their personal animus

14

towards Perkins. As a result, any substantive due process claim based on alleged discrimination is "subsumed by" or "duplicative of" the equal protection claims. Hu v. City of New York, 927 F.3d 81, 104 (2d Cir. 2019) (collecting cases).

To the extent that Perkins alleges that defendants interfered with his alleged contract rights without providing procedural due process, the claim is also subject to dismissal. Courts have recognized that "[t]he adequacy of litigation as a means to determine the meaning of a contract is a premise of our legal system" and, thus, that an opportunity to litigate in state court is "all the process 'due' for ordinary claims of breach of contract." Mid-American Waste Sys. v. City of Gary, 49 F.3d 286, 291 (7th Cir. 1995); see also Jamerson v. Milwaukee Cnty., No. 2:04-cv-00749749, 2006 WL 1589655, at *6 (E.D. Wis. June 7, 2006) ("To the extent Jamerson is alleging that his liberty interest in his right to contract was violated by the defendants without proper notice and a hearing, his claim must still fail. This is because, even assuming Jamerson does have such a 'liberty interest,' all the process that is due when a commercial contract dispute is at stake is the opportunity to litigate the breach of contract claim in state court."). Likewise, courts have held that "a state tort claim for tortious interference with a contract" is an adequate post-deprivation remedy when a government official allegedly interferes with a plaintiff's contract and, thus, that "a section 1983 procedural due process claim is not available." Bennett v. Monette, 507 F. Supp. 2d 514, 518 (E.D.N.C. 2007); see also Etherton v. City of Rainsville, 662 F. App'x 656, 663 (11th Cir. 2016) (concluding that the existence of procedures through which plaintiffs could have sought a remedy for alleged interference with a contract right precluded them from stating a viable claim for denial of procedural due process); SMJ Towing, Inc. v. Vill. of Midlothian, No. 1:05-cv-03020, 2005 WL 3455856, at *3 (N.D. Ill. Dec. 16, 2005)

(dismissing a procedural due process claim based on alleged interference with contract rights since adequate state remedies were available through an action for tortious interference with contract). Because Perkins does not plausibly allege that the interference with his right to contract "occurred in the absence of adequate procedural protections," he fails to state a claim for denial of procedural due process. Anderson v. Dickson, 715 F. App'x 481, 486 (6th Cir. 2017).

### C.      Claims Six and Seven

In Claims Six and Seven, Perkins seeks relief for alleged violations of 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) prohibits two or more persons from "conspir[ing]" to deprive another person "of the equal protection of the laws." 42 U.S.C. § 1985(3). "Section 1986, in turn, provides a cause of action against anyone who has knowledge of a § 1985 conspiracy and who, 'having the power to prevent or aid in preventing the commission of' acts pursuant to that conspiracy, 'neglects or refuses to do so.'" Strickland v. United States, 32 F.4th 311, 361 (4th Cir. 2022) (quoting 42 U.S.C. § 1986).

Having reviewed the complaint, the court concludes that Perkins has failed to state a claim for relief under § 1985(3). "To recover under § 1985(3), a plaintiff must establish the existence of a conspiracy and show 'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." C & H Co. v. Richardson, 78 F. App'x 894, 901 (4th Cir. 2003) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)); see also Strickland, 32 F.4th at 361 (explaining that a plaintiff must plausibly allege, among other elements, "a conspiracy of two or more persons . . . who are motivated by a specific class-based, invidiously discriminatory animus") (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir.

1995)). And to establish the existence of a conspiracy under § 1985(3), a plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff's] constitutional rights." Simmons, 47 F.3d at 1377. "More specifically, the plaintiff must show 'that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences.'" Strickland, 32 F.4th at 361–62 (quoting Simmons, 47 F.3d at 1378). Notably, the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts" to satisfy this standard. Id. (quoting Simmons, 47 F.3d at 1377). The appellate court has consistently rejected § 1985 claims "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." Id. (quoting Simmons, 47 F.3d at 1377).

Here, Perkins broadly alleges that "Newcomer et al entered into a conspiracy to deprive . . . Perkins, an incarcerated African American, . . . of equal protection/equal privileges and immunities . . . by refusing to allow JPay LLC to distribute a JP6 digital tablet to . . . Perkins which had been distributed to other Augusta Correctional Center prisoners on May 17, 2022." Compl. 48. He then recounts various grievances that he filed complaining about being denied access to a tablet, some of which were rejected at intake or determined to be unfounded. Id. at 48–62. While Perkins may disagree with how his grievances were handled, his allegations do not indicate that the defendants "had any sort of 'single plan, the essential nature and scope of which was known to each person who is to be held responsible for its consequences.'" Strickland, 32 F.4th at 362 (quoting Simmons, 47 F.3d at 1378). At most, the allegations suggest that the defendants responsible for responding to Perkins's informal complaints and grievances failed to adequately address the claims of discrimination that he raised in those filings. They do

not suggest any "affirmative adherence to a single plan of discriminatory animus based on [his] protected-class status." Id.; see also id. (emphasizing that the defendants' "alleged deliberate difference to [the plaintiff's] claims of sexual harassment" was "hardly the stuff of a conspiracy").

Because Perkins does not "plausibly allege any conspiratorial plan of class-based discriminatory animus," the § 1985(3) claim asserted in Claim Six must dismissed for failure to state a claim upon which relief can be granted. Id. And since a § 1986 claim "depends on the existence of a viable § 1985(3) claim," id., the § 1986 claim asserted in Claim Seven is also subject to dismissal.

### D.    Claim Nine

In Claim Nine, Perkins asserts that various defendants violated the Commerce Clause of the United States Constitution by obstructing his "ability to purchase JPay LLC products and services and to communicate with the company by email." Compl. 68. The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Perkins's claim appears to be based on what is referred to as the "dormant Commerce Clause." Am. Trucking Ass'ns v. Mich. PSC, 545 U.S. 429, 433 (2005) (quoting Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179 (1995)).

"The dormant Commerce Clause restrains 'the several states' by limiting 'the power of the States to erect barriers against interstate trade.'" McBurney v. Young, 667 F.3d 454, 468 (4th Cir. 2012) (quoting Dennis v. Higgins, 498 U.S. 439, 446 (1991)). "This negative command presents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not

bear." <u>Am. Trucking Ass'ns</u>, 545 U.S. at 433 (internal quotation marks and alterations omitted). "And it is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." <u>McBurney</u>, 667 F.3d at 468 (internal quotation marks omitted). "The Clause does not purport to restrict or limit intrastate commerce, nor protect the participants in intrastate or interstate markets, nor the participants' chosen way of doing business." <u>Brown v. Hovatter</u>, 561 F.3d 357, 364 (4th Cir. 2009) (citing <u>Exxon Corp. v. Governor of Md.</u>, 437 U.S. 117, 127 (1978)).

The court agrees with the defendants that Perkins's allegations do not implicate the dormant Commerce Clause. He does not allege that his denial of access to a JP6 device or JPay services resulted from regulations or policies that "discriminate against interstate commerce or out-state-economic interests." <u>McBurney</u>, 667 F.3d at 469 (internal quotation marks omitted). Instead, Perkins claims that defendants personally discriminated against him by obstructing his ability to access JPay products and services. As noted above, the dormant Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." <u>Exxon</u>, 437 U.S. at 127; <u>see also</u> <u>Colon Health Ctrs. of Am., LLC v. Hazel</u>, 733 F.3d 535, 543 (4th Cir. 2013) ("In conducting the discrimination inquiry [under the dormant Commerce Clause] a court should focus on discrimination against <u>interstate commerce</u>—not merely discrimination against the specific parties before it.") (emphasis in original). Consequently, Claim Nine fails to state a plausible violation of the dormant Commerce Clause.

E.    **Claim Ten**

In Claim Ten, Perkins asserts that various defendants violated his "contract rights" under the Constitution of Virginia. Compl. 71. More specifically, Perkins alleges that the defendants

violated his "right to contract under the Virginia Constitution Section 1" by refusing to allow JPay representatives to provide him with a JP6 tablet "after he signed a contract to receive [one]." Id.

The court construes this claim as being brought pursuant to Sections 1 and 11 of the Bill of Rights set forth in Article I of the Constitution of Virginia. Section 1 provides that "all men are by nature equally free and independent and have certain inherent rights," including "the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety." Va. Const. Art. I, § 1. Section 11 provides that "no person shall be deprived of his life, liberty, or property without due process of law" and "that the General Assembly shall not pass any law impairing the obligation of contracts." Va. Const. Art. I, § 11.

"In order to enforce a private right of action under the Virginia Constitution, the provision in question must be self-executing." Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) (citing Robb v. Shockoe Slip Found., 228 Va. 678, 324 S.E.2d 674, 676 (Va. 1985)). "Article I, Section 1 is not self-executing because 'it merely recites principles, [and] provides no rules by means of which those principles may be given the force of law." McKiver v. Ireland, No. 7:23-cv-00548, 2024 WL 677707, at *6 (W.D. Va. Feb. 20, 2024) (quoting Gray v. Rhoads, No. 99-95, 2001 WL 34037320, at *5 (Va. Cir. 2001)). Accordingly, Perkins has no viable cause of action based on an alleged violation of Section 1 of the Bill of Rights.

To the extent that Claim Ten is based on the contract clause of Section 11, the claim fares no better. "The Virginia contract clause has been interpreted by [the Supreme Court of

Virginia] in a manner similar to the treatment of the federal clause by the United States Supreme Court." Working Waterman's Ass'n v. Seafood Harvesters, Inc., 227 Va. 101, 314 S.E.2d 159, 163 (Va. 1984); see also U.S. Const. art. I, § 10, cl. 1 (providing that "[n]o State shall . . . pass any Law impairing the Obligation of Contracts . . . ."). By its terms, the state contract clause, like the federal clause, applies only to legislative action taken by the state. See New Orleans Waterworks Co. v. La. Sugar Refining Co., 125 U.S. 18, 30 (1888) ("The prohibition [in the federal clause] is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals."). Here, Perkins does not allege that any legislative action by the Virginia General Assembly has impaired any contract to which he is a party. Instead, he complains of actions taken by individual VDOC officials. Consequently, the complaint fails to state a cognizable violation of the contract clause of Section 11.

Finally, to the extent that Perkins alleges that the defendants violated his right to due process under Section 11 by refusing to allow him to receive a JP6 tablet, the claim is subject to dismissal for the same reasons as his federal due process claims. See Shivaee v. Commonwealth, 270 Va. 112, 613 S.E.2d 570, 574 (Va. 2005) ("Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both."). Consequently, Claim Ten must be dismissed for failure to state a claim upon which relief can be granted.

## B.   Remaining Claims

The defendants have moved for summary judgment on the remaining claims (Claims Three, Four, Five, Eight, and Eleven) based on affidavits submitted in support of the motion

for summary judgment. With respect to those claims, the court concludes that outstanding discovery renders summary judgment premature. Accordingly, the defendants' motion for summary judgment is denied without prejudice as to Claims Three, Four, Five, Eight, and Eleven, and Perkins's motions for relief under Rule 56(d) are granted in part with respect to those claims. Additionally, the court grants the defendants' motion for extension of time to respond to the pending discovery requests. Perkins will be given 60 days to complete discovery relevant to the remaining claims. The defendants will be given 75 days to file a renewed motion for summary judgment.

## IV.   Conclusion

For the reasons stated, the defendants' motion for summary judgment, ECF No. 32, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**; Perkins's motions for relief under Rule 56(d), ECF Nos. 41 and 46, are **GRANTED IN PART AND DENIED IN PART**; and the defendants' motion for extension of time to respond to pending discovery requests, ECF No. 51, is **GRANTED**. An appropriate order will be entered.

Entered: September 25, 2024

Mike Urbanski
Senior U.S.District Judge
2024.09.25 09:31:44
-04'00'

Michael F. Urbanski
Senior United States District Judge